UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| **ANDRE WILLIAMS**, | § | |
| | § | |
| *Plaintiff,* | § | |
| **v.** | § | **EP-25-CV-00055-ATB** |
| | § | |
| **FRANK BISIGNANO**, *Commissioner of the* | § | |
| *Social Security Administration*, | § | |
| | § | |
| *Defendant.* | § | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

This is a civil action seeking judicial review of an administrative decision by the Social

Security Administration (SSA).  Pursuant to 42 U.S.C. § 405(g), Plaintiff Andre Williams, the

claimant at the administrative level, appeals from the final decision of Defendant Frank

Bisignano, the SSA's Commissioner, denying his claim for disability insurance benefits under

Title II of the Social Security Act, 42 U.S.C. § 401, *et seq.*  The parties consented to have a

magistrate judge conduct all proceedings, including the entry of final judgment.  For the reasons

that follow, the Commissioner's decision is AFFIRMED.

## I.   BACKGROUND

On June 1, 2023, Williams applied for disability insurance benefits*,* alleging that he

became disabled as of March 1, 2023, due to lumbar spinal stenosis, hip osteoarthritis, and pain

in his lower back, hip, and sacroiliac joint;[1] after filing the application, Williams alleged major

depressive disorder as a further basis of his disability.[2]  He was 57 years old when he applied for

---

[1] Tr. of Admin. R. [hereinafter Tr.] at 175, 214.

[2] *Id.* at 40, 322.

benefits.[3]  He has a master's degree in public health education.[4]  Between 1990 and 2010, Williams served in the U.S. Army as a combat engineer, and between September 2013 and February 2023, he worked as a program specialist and coordinator for the Army's community service program at Fort Bliss, Texas.[5]  In 2021, the Department of Veterans Affairs assigned him a 100-percent combined disability rating, effective July 14, 2021.[6]  In February 2023, he stopped working because, according to him, his medical conditions got a lot worse.[7]

Williams's benefits claim was denied initially on January 4, 2024, and upon reconsideration on March 14, 2024.  Thereafter, Williams requested a hearing before an Administrative Law Judge (ALJ).  On October 3, 2024, ALJ Richard Exnicios held a hearing, where Williams and a vocational expert (VE) testified; at the hearing, Williams was represented by his administrative counsel.  On October 22, 2024, ALJ Exnicios issued a written decision, wherein he found that Williams was not disabled within the meaning of the Social Security Act and denied Williams's claim.[8]  On November 19, 2024, Williams appealed to the Social Security Appeals Council for review of the ALJ's decision.[9]  On January 3, 2025, the Appeals Council

---

[3] *Id.* at 175.

[4] *Id.* at 34, 215.

[5] *Id.* at 35–36, 215, 231.

[6] *Id.* at 36–37, 1318.

[7] *Id.* at 34–35.

[8] *Id.* at 23.

[9] *Id.* at 169–70.

denied his request for review, finding that no basis existed for changing the ALJ's decision.[10]
The ALJ's decision thereby became the "final decision" of the Commissioner.[11]

On February 24, 2025, Williams brought this action seeking judicial review of the
Commissioner's decision pursuant to 42 U.S.C. § 405(g).  On May 28, 2025, Williams filed his
opening brief requesting that the Commissioner's decision be vacated and his claim be remanded
for further proceedings.  Pl.'s Br. at 11, ECF No. 10.  On July 25, 2025, the Commissioner filed
a brief in response requesting that the Court affirm the Commissioner's decision, Br. in Supp. of
Comm'r's Decision at 7 [hereinafter Def.'s Resp.], ECF No. 14, and Williams followed by filing
a reply on August 8, 2025, Pl.'s Reply Br. [hereinafter Pl.'s Reply], ECF No. 15.

## II.   STANDARDS FOR JUDICIAL REVIEW

Judicial review, under 42 U.S.C. § 405(g), of the Commissioner's decision denying social
security benefits is "highly deferential."  *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018).
Courts review such a decision "only to ascertain whether (1) the final decision is supported by
substantial evidence and (2) whether the Commissioner used the proper legal standards to
evaluate the evidence."  *Webster v. Kijakazi*, 19 F.4th 715, 718 (5th Cir. 2021) (quotation marks
and citation omitted).

Substantial evidence "means—and means only—such relevant evidence as a reasonable
mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill*, 587 U.S. 97, 103
(2019) (internal quotes omitted).  It consists of "more than a mere scintilla," *id*, but "less than a
preponderance of the evidence," *Schofield v. Saul*, 950 F.3d 315, 320 (5th Cir. 2020).  "And

---

[10] *Id.* at 1.

[11] *See* 42 U.S.C. § 405(g) (providing that a claimant may obtain judicial review of any "final decision" of the Commissioner of Social Security); *Higginbotham v. Barnhart*, 405 F.3d 332, 336 (5th Cir. 2005) ("[W]hen the Appeals Council denies a request for review, the ALJ's decision becomes the Commissioner's final decision.").

whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek*, 587 U.S. at 103. "A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Whitehead v. Colvin*, 820 F.3d 776, 779 (5th Cir. 2016).

In applying the substantial evidence standard, a reviewing court "scrutinizes the record to determine whether such evidence is present," *Sun v. Colvin*, 793 F.3d 502, 508 (5th Cir. 2015), but it may not "reweigh the evidence in the record" or "try the issues *de novo*," *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018). "[N]or, in the event of evidentiary conflict or uncertainty," may the court "substitute [its] judgment for the Commissioner's, even if [it] believe[s] the evidence weighs against the Commissioner's decision." *Garcia*, 880 F.3d at 704 (internal quotes omitted). "Conflicts of evidence are for the Commissioner, not the court[], to resolve." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005)

### III.   THE SEQUENTIAL EVALUATION PROCESS AND THE ALJ'S KEY FINDINGS AND CONCLUSIONS

Eligibility for disability insurance benefits requires that the claimant be "disabled" within the meaning of the Social Security Act. 42 U.S.C. § 423(a)(1)(E). The Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A). "A claimant has the burden of proving he suffers from a disability." *Garcia*, 880 F.3d at 704.

To determine disability, the Commissioner uses a sequential, five-step approach, which considers:

(1) whether the claimant is presently performing substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the claimant

- 4 -

from doing past relevant work; and (5) whether the impairment prevents the claimant from performing any other substantial gainful activity.

*Kneeland v. Berryhill*, 850 F.3d 749, 753 (5th Cir. 2017) (cleaned up); *see also* 20 C.F.R. § 404.1520(a)(4). "The burden of proof is on the claimant at the first four steps," *Kneeland*, 850 F.3d at 753, and if he gets past these steps, "the burden shifts to the Commissioner on the fifth step to prove the claimant's employability," *Keel v. Saul*, 986 F.3d 551, 555 (5th Cir. 2021). A determination at any step that the claimant is disabled or is not disabled "ends the inquiry." *Id*.

Before going from step three to step four, the Commissioner assesses the claimant's residual functional capacity (RFC). *Kneeland*, 850 F.3d at 754. "The claimant's RFC assessment is a determination of the most the claimant can still do despite his [or her] physical and mental limitations and is based on all relevant evidence in the claimant's record." *Id.* (cleaned up); *see also* 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1). "The RFC is used in both step four and step five to determine whether the claimant is able to do [his] past work or other available work." *Kneeland*, 850 F.3d at 754.

Here, ALJ Exnicios evaluated Williams's claim pursuant to the above-mentioned five-step sequential evaluation process. As a threshold matter, the ALJ found that Williams's last date insured is December 31, 2028. Tr. at 16. At step one, the ALJ found that Williams had not engaged in substantial gainful activity since March 1, 2023, his alleged disability onset date. *Id.*

At step two, the ALJ found that Williams suffered from the following "severe" impairments: degenerative disc disease, osteoarthritis to the right hip, neuropathy, and obesity. *Id.* at 34–35. The ALJ however found that Willams's depression, though a medically determinable mental impairment, was "nonsevere." *Id.* at 18. In reaching that non-severe determination, the ALJ analyzed the agency's psychiatric-review technique (PRT), which requires ALJs to rate the degree of a claimant's functional limitations resulting from a mental

impairment in four broad functional areas.  *See* 20 C.F.R. § 404.1520a.[12]  The ALJ rated Williams's limitations in the four areas as follows: none in understanding, remembering, or applying information; none in interacting with others; mild in concentrating, persisting, or maintaining pace; and mild in adapting or managing oneself.  *Id.* at 18.  In addition, immediately following his PRT analysis, the ALJ evaluated the persuasiveness of the PRT findings made by state agency psychological consultants, George Grubbs, Psy.D., and Michael Plasay, Ph.D., who made their findings, respectively, at the initial and reconsideration stages of the administrative review process.  *Id.* at 18–19.  Specifically, Grubbs found that Williams had no medically determinable mental impairment, and he did not provide any limitation ratings.  *Id.* at 57.  On the other hand, Plasay found that Williams's depressive disorder constituted a non-severe medically determinable mental impairment, and he rated Williams's limitations in the four functional areas in the same way that the ALJ did later.  *Id.* at 66.  The ALJ found that Grubbs's findings were unpersuasive, but that Plasay's findings were persuasive.  *Id.* at 18–19.

At step three, the ALJ found that Williams's impairments, alone or in combination, were not severe enough to meet or equal, in severity, any impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 and therefore did not qualify for presumptive disability.  *Id.* at 19.

Next, before going to step four, the ALJ determined that Williams had the RFC to perform "light work" as defined in 20 C.F.R. §§ 404.1567(b), except for certain postural

---

[12] The four broad functional areas are: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself.  20 C.F.R. § 404.1520a(c)(3).  These four functional areas correspond to the four "areas of mental functioning" under Paragraph B of the agency's mental impairment Listings; they are commonly known as the "Paragraph B" criteria.  20 C.F.R. § 404, Subpt. P, App. 1, § 12.00A(2)(b) (listing the areas); *id.* § 12.00E (providing details on each area).  In evaluating each area, the regulations call for the use of a five-point scale: "[n]one, mild, moderate, marked, and extreme."  20 C.F.R. § 404.1520a(c)(4).  As relevant here, a "mild" rating in a particular area means that the claimant's "functioning in this area independently, appropriately, effectively, and on a sustained basis is slightly limited."  *Id.* § 404, Subpt. P, App. 1, § 12.00F(2)(b).

limitations: he is able to occasionally balance, stoop, kneel, crouch, or crawl and occasionally climb ramps or stairs, but he is unable to climb ladders, ropes, or scaffolds. *Id.* at 19. In the RFC, the ALJ did not include any mental limitations.

At step four, the ALJ found, based upon the VE's testimony, that given Williams's RFC, he could perform his past relevant work as a community worker (Dictionary of Occupational Titles (DOT) Code No. 195.367-018), as it is generally performed. The VE testified that according to the DOT, the community worker job is skilled work with a Specific Vocational Preparation rating of 6 and is generally performed at the "light" exertional level, though Williams actually performed it at the "medium" exertional level. *Id.* at 22–23, 51. The ALJ concluded that Williams was not disabled from March 1, 2023, his alleged disability onset date, through October 22, 2024, the date of the ALJ's decision. *Id.* at 23.

## IV.  DISCUSSION

Williams raises a single point of error. He argues that the ALJ erred as a matter of law by failing to consider Williams's non-severe mental impairment (*i.e.*, his depression) in the RFC assessment. Pl.'s Br. at 5. On that basis, Williams asks the Court to vacate the Commissioner's decision and remand his claim for further proceedings. *Id.* at 11.

"The ALJ's RFC assessment is an administrative, rather than a medical, determination," *McDonald v. Astrue*, 492 F. App'x 875, 885 (10th Cir. 2012). A claimant's RFC "'is determined by combining a medical assessment of [his] impairments with descriptions by physicians, the [claimant], or others of any limitations on [his] ability to work.'" *Bayer v. Colvin*, 557 F. App'x 280, 288 (5th Cir. 2014) (quoting *Hollis v. Bowen*, 837 F.2d 1378, 1386–87 (5th Cir. 1988)); *see also* 20 C.F.R. § 404.1545(a)(3) (The ALJ must assess the claimant's RFC "based on all of the relevant medical and other evidence."). The ALJ makes this determination by considering the

claimant's physical, mental, and other abilities affected by the impairments.  *See* 20 C.F.R. § 404.1545(a)(4), (b)–(d).  Limitations that affect "understanding, remembering, and carrying out instructions" and "responding appropriately to supervision, co-workers, and work pressures in a work setting" may reduce the claimant's ability to do past work and other work.  *Id.* § 404.1545(c).  And, as important here, in assessing the RFC, the ALJ must "consider all of [the claimant's] medically determinable impairments," including those "that are not 'severe.'"  *Id.* § 404.1545(a)(2); *see also id.* § 404.1545(e) ("[W]e will consider the limiting effects of all your impairment(s), even those that are not severe, in determining your [RFC].").

Specifically, Williams argues that in his RFC assessment, the ALJ failed to provide any discussion of Williams's non-severe mental impairment of depression.  Pl.'s Br. at 8, 10.  Williams points out that at step two, the ALJ found that Wiliams had mild limitations in concentrating, persisting, or maintaining pace and in adapting or managing oneself, but the ALJ did not include in the RFC any limitations in these functional areas.  *Id.* at 8.  He contends that the entirety of the ALJ's evaluation of Williams's mental impairment is found at step two, *id.* at 10, save for an acknowledgement in the RFC assessment that, at the hearing, Williams testified to having depression and difficulty with focusing and staying alert, *id.* at 8.  In the RFC assessment, Williams continues, there is no summary of his mental health treatment notes; nor is there any explanation as to why no mental limitations were included in the RFC.  *Id.* at 8–9.  Williams further asserts that the ALJ failed to adequately consider his mental impairment in assessing the RFC.  *Id.* at 10.  He does not argue that the ALJ's step-two findings or his ultimate RFC determination is unsupported by substantial evidence.

In response, the Commissioner reads the ALJ's decision "as a whole" and based on that reading, argues that the ALJ adequately explained why the RFC did not require mental

limitations to address Williams's non-severe depression.  Def.'s Resp. at 1, 4.  The Commissioner gets there by combining the ALJ's evaluation of Williams's credibility in the RFC assessment and the ALJ's discussion of the pertinent evidence at step two.  *Id.* at 4–6.  The Commissioner adds that substantial evidence supports the ALJ's decision to exclude any mental limitations in the RFC.  *Id.* at 4.

Williams's arguments raise the question of how much further—beyond the severity discussion at step two—must the ALJ discuss a non-severe mental impairment in assessing the RFC?  It appears that the Fifth Circuit has not addressed this question (the parties do not cite any Fifth Circuit decision in support of their arguments).  The Tenth Circuit has, *Wells v. Colvin*, 727 F.3d 1061, 1064 (10th Cir. 2013), and it held that where an ALJ finds at step two that a mental impairment is non-severe and that the claimant has at least "mild" limitation in one of the four PRT or Paragraph B functional areas, the ALJ must provide, as part of his RFC assessment, a "more detailed assessment" of the effects of the mental impairment on the claimant's RFC, *id.* at 1065 & n.3, 1069, 1071;[13] *accord Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1256–57, 1264, 1268–70 (11th Cir. 2019) (holding that the ALJ erred because in assessing the RFC, he failed to provide any "real assessment" of the claimant's mental impairments, where the ALJ found, at step two, that the claimant's mental impairments were non-severe and he had no more than "mild" limitation in any of the four Paragraph B functional areas).

To be sure, the SSA's regulations explicitly require only that the ALJ "consider" non-severe impairments in assessing the RFC.  *See* 20 C.F.R. § 404.1545(a)(2), (e), *supra*; *see also Britt v. Saul*, 860 F. App'x 256, 262 (4th Cir. 2021) ("While the [ALJ] did not specifically

---

[13] *See also Wells*, 727 F.3d at 1071 (remanding that case for "a more thorough analysis" of the effect of the claimant's medically determinable non-severe mental impairments on her RFC).

address [the claimant's] chronic pain, reflux, and hypothyroidism in the [RFC] analysis, neither our caselaw nor the regulations explicitly require this. The judge is only required to *consider* these non-severe impairments." (emphasis in original)). In reaching its holding, the *Wells* court drew upon the SSA's directive—in Social Security Ruling (SSR) 96-8p[14]—that "the limitations identified in the 'paragraph B' . . . criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3," and "[t]he mental RFC assessment used at steps 4 and 5 . . . requires *a more detailed assessment*." SSR 96-8p, 1996 WL 374184, at *4 (SSA July 2, 1996) (emphasis added), *cited in Wells*, 727 F.3d at 1065, 1069. Here, at the end of his step-two analysis, ALJ Exnicios recited the just-quoted language from SSR 96-8p, though he did not cite the SSR. Tr. at 19.[15] Likewise, the ALJ in *Schink* recited the same language, and based on that language, the *Schink* court concluded that even if the ALJ's RFC assessment "included some silent consideration of [the claimant's] mental impairments," the court had "no way of knowing whether it included the 'more detailed assessment' required." *Schink*, 935 F.3d at 1269.

Here, in support of his arguments, Williams relies on *Castillo v. Kijakazi*, 599 F. Supp. 3d 483, 489 (W.D. Tex. 2022) (finding that the ALJ erred because "the ALJ failed to *explain*

---

[14] *See Bryant v. Astrue*, 272 F. App'x 352, 356 (5th Cir. 2008) ("Although the [SSA's] rulings are not binding on this court, we have consulted them 'when the statute at issue provides little guidance.'" (addressing SSR 96-8p) (quoting *Myers v. Apfel,* 238 F.3d 617, 620 (5th Cir. 2001))).

[15] ALJ Exnicios wrote:

The limitations identified in the "paragraph B" criteria are not a[n] [RFC] assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental [RFC] assessment used at steps 4 and 5 of the sequential evaluation process requires a *more detailed assessment*.

Tr. at 19 (emphasis added). Williams additionally argues that at no time did the ALJ provide "the promised 'more detailed analysis' that connected the evidence to the ALJ's implicit finding that no mental limitations were warranted." Pl.'s Br. at 10; *see also id.* at 8 (quoting ALJ's recitation of the SSR 96-8p language)).

why he omitted *any* mental limitations from the [RFC] formulation" despite concluding, at step two, that the claimant had mild mental limitations in all four mental domains resulting from his depression).  For at least two reasons, *Castillo* is distinguishable.  First, the ALJ's decision here does not reflect that he, like the ALJ in *Castillo*, "relied on the . . . non-severity of [the claimant's] depression as a basis not to impose any mental limitations in his [RFC] assessment." *Id.* at 488; *see also id.* at 489 (similar).[16]  Second, in *Castillo*, the ALJ ignored medical opinions that suggested that mental limitations should have been included in the RFC.  *Id.* at 487 (noting that "the ALJ overlooked several of [the consultative psychological examiner's] more restrictive findings"); *id.* at 488 n.5 (noting that the examiner's findings "suggest[] that [the claimant] may have been moderately limited in understanding, remembering, and applying information"), but here, there are no medical opinions or prior administrative findings about any mental RFC limitations.  Specifically, the Commissioner points out, and Williams does not dispute, that there are no medical opinions related to mental RFC limitations.  *See* Def.'s Resp. at 6; *see generally* Pl.'s Reply at 1–4.  And neither of the state agency psychological consultants, who reviewed the record, respectively, at the initial and reconsideration stages of the administrative review process,

---

[16] It appears that the *Castillo* court's observation—that the ALJ relied on the non-severity of the claimant's depression as a basis not to impose any mental limitations in the RFC—was based on a statement that the ALJ made in the RFC assessment.  There, at step two, the ALJ concluded that the claimant's depression was not severe, and, in the RFC assessment, immediately after evaluating a state agency consultant's assessment that the claimant had a severe depressive disorder, the ALJ stated that "the record does not establish that [the claimant] has more than mild limitations in her mental functioning."  *Castillo*, 599 F. Supp. 3d at 487; *see also id.* at 489 (noting that the ALJ stated that the claimant "was no 'more than mild[ly] limit[ed] in her mental functioning" (brackets in original)); *compare Wells*, 727 F.3d at 1069 (observing that after stating his conclusion that the claimant's mental impairments were non-severe, the ALJ stated that "these findings do not result in further limitations in work-related functions in the RFC assessment below" and stating that "[t]he language used [by the ALJ] suggests that the ALJ may have relied on his step-two findings to conclude that [the claimant] had no limitation based on her mental impairments" (original brackets omitted)), *with Suttles v. Colvin*, 543 F. App'x 824, 826 (10th Cir. 2013) (distinguishing *Wells* on the grounds that "the ALJ did not make any ancillary statement, like that made by the ALJ in *Wells*, affirmatively suggesting an improper conflation of the step-two and step-four assessments" (citing *Wells*, 727 F.3d at 1069)).

assessed any mental RFC. *See* Tr. at 59 ("No MRFCs are associated with this claim."); *id*. at 69 (same).

Turning to ALJ Exnicios's written decision, the Court observes that the ALJ acknowledged that in determining the RFC, he "must consider all of the claimant's impairments, including impairments that are not severe," Tr. at 15–16 (citing 20 C.F.R. § 404.1545 and SSR 96-8p), and later, stated that he "considered all of the claimant's medically determinable impairments, including those that are not severe, when assessing the claimant's [RFC]," *id.* at Tr. at 17–18; *see also Bales v. Colvin*, 576 F. App'x 792, 799 (10th Cir. 2014) (observing that "the ALJ noted that, when assessing a claimant's RFC, 'all of the claimant's impairments, including impairments that are not severe' must be considered," and stating that "when an 'ALJ indicates she has considered all the evidence, our practice is to take the ALJ at her word.'" (brackets omitted) (quoting *Wall v. Astrue,* 561 F.3d 1048, 1070 (10th Cir. 2009))).  That the ALJ indeed considered Williams's non-severe depression in assessing the RFC is evident in the credibility portion of his RFC analysis.  In that portion, the ALJ noted, among Williams's other allegations, that he testified at the hearing that he has depression, his depression has worsened, and it is hard for him to focus and stay alert.  Tr. at 20.

And at the end of the credibility portion, the ALJ concluded that Williams's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with "the medical evidence and other evidence in the record for the reasons explained in this decision."  The quoted language is a reference to, *inter alia*, the ALJ's earlier discussion at step two.  *See Ray v. Colvin*, 657 F. App'x 733, 734–35 (10th Cir. 2016) (noting that in the RFC assessment, the ALJ stated that "the evidence discussed above" supports a finding that the claimant's non-severe mood disorder limits her to simple, routine, repetitive tasks, and stating

that "[t]he evidence referenced" by the ALJ was discussed at step two); *cf. Porteus v. O'Malley*, No. 23-969, 2024 WL 2180203, at *2 (2d Cir. May 15, 2024) (observing that in his persuasiveness analysis under 20 C.F.R. § 404.1520c, the ALJ noted that the opinions of a consultative examining psychologist were "consistent with the record as a whole, including the evidence described above," and explaining that, "[t]hat record as a whole, as the ALJ set forth earlier in his decision" included the plaintiff-claimant's mental health treatment notes, his hearing testimony, and evidence of his daily activities).

Turning to the ALJ's step-two discussion, as previously mentioned, the ALJ not only evaluated the severity of Williams's depression using the PRT but also evaluated the persuasiveness of the state agency psychological consultants' PRT findings. Tr. at 18–19.  In finding that Williams had mild limitations in concentrating, persisting or maintaining pace and in adapting or managing oneself, the ALJ noted that a treatment note, dated July 7, 2023, from Nazish Shafi, M.D., showed that, upon examination, Williams was alert and oriented, had good attention and concentration, and had good insight.  *Id.* at 18 (citing Tr. at 948).  And in finding that Plasay's PRT findings were persuasive, the ALJ mentioned that in a progress note, dated September 7, 2023, Miranda Castaneda, a nurse practitioner, noted that Williams's depression was "stable with medication" and that upon examination, he was alert, oriented, cooperative, and had an appropriate mood and affect.  *Id.* at 18 (citing Tr. at 816–17).  The ALJ also recounted from a progress note, dated August 5, 2024, from Daniel Murphy, M.D., that the doctor's examination showed that Williams had intact cognition and judgment.  *Id.* at 18–19 (citing Tr. at 1427).

The above-mentioned evidence that the ALJ discussed at step two constitutes substantial evidence supporting the ALJ's credibility conclusion regarding Williams's testimony about his

depression.  Therefore, the ALJ's credibility assessment in his RFC analysis and his step-two discussion together were adequate to fulfill his obligation to provide a more detailed assessment of Williams's non-severe depression in his RFC analysis.  *See Wells*, 727 F.3d at 1065, 1069 (An ALJ's discussion of the claimant's mental impairments in the credibility portion of his RFC analysis may satisfy the ALJ's obligation to provide a "more detailed assessment" of the claimant's mental abilities as part of his RFC determination—provided that the ALJ's conclusion about the claimant's credibility is supported by substantial evidence); *see also Prude v. Comm'r, Soc. Sec. Admin*., No. 23-14198, 2024 WL 5103664, at *4 (11th Cir. Dec. 13, 2024) (considering the ALJ's discussion in the RFC analysis and his discussion of state agency consultants' findings at "step two, following the 'paragraph B' analysis," and concluding that "[t]he decision—as a whole—indicates that the ALJ considered [the claimant's] mental impairments in determining his residual functional capacity"); *Hurter v. Astrue*, 465 F. App'x 648, 652 (9th Cir. 2012) (concluding that the ALJ's omission of the claimant's depression in the RFC assessment does not require reversal, reasoning that "[t]he ALJ discussed these very reasons at step two while classifying [the claimant's] depression . . . as non-severe").[17]

Moreover, to the extent that the ALJ needed to say more in his RFC analysis, a remand is not warranted because the evidence here does not support including any mental limitations in the RFC.  *See Alvey v. Colvin*, 536 F. App'x 792, 793–95 (10th Cir. 2013) (finding error where at step two, the ALJ assessed that the claimant had mild limitations in three broad functional areas under the PRT, but in his RFC assessment, the ALJ "did not engage in any analysis of [her] mental functions and how they may be impacted (or not)" by her non-severe depression and

---

[17] *Cf. Belk v. Colvin*, 648 F. App'x 452, 454–55 (5th Cir. 2016) (reviewing the ALJ's discussion of medical evidence "in a different part of her decision" to assess whether the ALJ sufficiently explained his step-three finding that the claimant's impairments did not meet a listed impairment).

anxiety, and further finding that the error was harmless because "the evidence in this case does not support assessing any functional limitations from mental impairments").[18]  As mentioned above, there are no medical opinions or prior administrative findings about mental RFC limitations.  Williams, for his part, does not point to any medical evidence that supports incorporating mental limitations in the RFC.  On the contrary, the evidence discussed by the ALJ at step two—in particular, the evidence that Williams's depression was stable with medication, *see ante*—does not support incorporating any mental limitations in the RFC.  *See Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987) ("A medical condition that can reasonably be remedied either by surgery, treatment, or medication is not disabling.").  Therefore, "it is inconceivable that the ALJ would have reached a different conclusion on this record, even had the ALJ" provided further analysis of Williams's non-severe depression in his RFC assessment.  *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003).

The Court overrules Williams's point of error.

## V.   CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that the Commissioner's decision is **AFFIRMED**.

**So ORDERED and SIGNED this  27th  day of August 2025.**

**ANNE T. BERTON**
**UNITED STATES MAGISTRATE JUDGE**

---

[18] *Cf. Mancera v. Barnhart*, 67 F. App'x 248, 2003 WL 21145781, at *1 n.2 (5th Cir. 2003) (rejecting the claimant-appellant's argument that the ALJ erred in failing to take into account the combined effects of all her impairments when determining her RFC because the ALJ's RFC determination did consider her mood disorder and "[t]here was no medical evidence that [her] mood disorder posed an otherwise greater limitation").